IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| PENN-STAR INSURANCE, COMPANY, a corporation, | ) ) ) | CV 11–55–M–DWM |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| COYOTE RIDGE CONSTRUCTION, INC., and TIMOTHY W. FLOTRE, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

The plaintiff, Penn-Star Insurance Company, filed this lawsuit against the

defendants, Coyote Ridge Construction, Inc., and Timothy Flotre, seeking a

declaration that it has no duty to defend or indemnify the defendants under the

terms of a commercial insurance policy that Penn-Star issued to the defendants.

Before the Court are the plaintiff's motion for summary judgment and the

defendants' motion for partial summary judgment. The Court also ordered the

parties to file briefs addressing the Court's jurisdiction under the Declaratory

Judgment Act. Having considered the arguments in that briefing, as well as the

parties' motions for summary judgment, the Court exercises jurisdiction over this matter. Further, Penn-Star has a duty to defend the defendants in the underlying state-court proceeding. The motions for summary judgment as they relate to Penn-Star's duty to indemnify are denied. There are too many factual disputes at this point to resolve that issue.

**BACKGROUND**

When assessing whether an insurer has a duty to defend, it is necessary to construe the facts in favor of the insured. *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). That principle is applied to the factual background here.

This lawsuit arises out of a residential construction agreement entered into between the defendants and Van and Donna Poole. In that agreement, the defendants agreed to construct a home for the Pooles beginning in the late summer of 2008. According to the Pooles, the defendants verbally agreed to construct the home for a cost of no more than $750,000. When that cost estimate was determined to be impossible to meet, the defendants signed a letter agreeing to finish construction of the home for no more than an additional $577,000 (for a total project price of $979,333.91). By the time this written agreement was signed in January 2009, the Pooles had already paid $400,000 to the defendants.

Construction of the home continued until late March or early April 2009 and, by this time, the Pooles had paid an additional $560,060.17. The Pooles had also learned that the house was far from complete and that the flooring that had already been paid for had yet to be installed. The defendants also informed the Pooles that a number of costs had never been included in the pricing or estimates and were not included in the final price agreement, including $219,484.50 in excavation work.

The Pooles allege that, as a result of the defendants' misrepresentations and failure to complete the job, they suffered financial losses by hiring another contractor to finish the job and ensuring the job was completed before winter. The Pooles filed a state court lawsuit against the defendants in October 2010, alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, negligent misrepresentation, constructive fraud, and negligence. *See Poole v. Coyote Ridge Constr., Inc.*, Cause No. DV–10–1478A (Mont. 11th Jud. Dist. Ct., Flathead Co.)

The Penn-Star Policy provides $1,000,000 single liability coverage per occurrence for claims covered under the policy. Penn-Star is currently providing the defendants with a defense in the underlying state lawsuit under a reservation of rights. Penn-Star brought this declaratory judgment action seeking a declaration

that it has no duty to defend or indemnify the defendants in that lawsuit.

Penn-Starr filed a motion for summary judgment on all claims, arguing that the undisputed facts show that it has no duty to defend or indemnify because the defendants' acts were not a covered "occurrence," the Pooles failed to allege a covered injury, and the Pooles' injuries are expressly excluded from coverage under the Policy. The defendants filed a cross-motion for summary judgment arguing that all the harms alleged by the Pooles were unintentional torts and that the underlying complaint alleges both "property damage" and "bodily injury" that are covered by the Policy. The defendants concede that not all of the Pooles' claims, if proven, would be covered under the Policy (e.g., the breach of contract, breach of covenant of fair dealing, conversion, and unjust enrichment). But, if an insurer has a duty to defend one claim, it must defend them all, even if the remaining claims would not be covered. *See e.g. Home Ins. Co. v. Pinski Bros., Inc.*, 500 P.2d 945, 949–50 (Mont. 1972).

After the parties filed their motions, the Court sua sponte ordered the parties to address the question of whether the Court should dismiss this action under the Declaratory Judgment Act. *See* (dkt # 27) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995)).

4

**SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

**ANALYSIS**

**I.      Duty to defend**

The Penn-Star Policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence," which the Policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Policy, however, reads, "This insurance does not apply to . . . 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Penn-Star argues that it does not have a duty to defend because the Pooles, in the state-court proceeding, have not alleged facts giving rise

to an "occurrence," "bodily injury," or "property damage." Moreover, it claims that any injury was expected or intended from the defendants' standpoint. Applying the principles of Montana insurance case law, Penn-Star has a duty to defend.

### A.    Duty-to-defend standard

To determine whether a claim triggers the duty to defend, the court must look to the provisions of the policy and the allegations in the complaint. *Farmers Union Mut. Ins. Co.*, 90 P.3d at 385. An insurer's duty to defend arises when a complaint alleges facts, which if proven, would result in coverage under the terms of the policy. *Id*.

"When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' [the] court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Id*. "[I]t is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language." *Town of Geraldine v. Mont. Mut. Ins. Auth.*, 198 P.3d 796, 800 (Mont. 2008). "Unless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a

duty to defend." *Farmers Union Mut. Ins. Co.*, 90 P.3d at 386.

**B.     Coverage for an "occurrence"**

Penn-Star argues that the Pooles' injuries, if any, were not caused by an "occurrence" because the defendants acted intentionally and not by accident. The defendants, on the other hand, maintain that the Policy covers their actions because the underlying complaint alleges unintentional, negligent conduct, not intentional business decisions.

The Montana Supreme Court's decision in *Northwest Natural Casualty Co. v. Phalen*, 597 P.2d 720 (Mont. 1979), provides guidance here. In *Phalen*, the Court addressed an insurer's duty to defend under a public-liability provision in a homeowner's policy after the insured was accused in a civil action of assaulting and severely injuring a man outside a bar. The policy defined "occurrence" as "an accident which results in bodily injury or property damage," and it excluded coverage for bodily injury, "which is either expected or intended from the standpoint of the insured." *Id.* at 721. The Montana Supreme Court held that the insurer had a duty to defend because under the claim alleged, it was possible to conclude that while the insured acted intentionally, the resulting bodily injury was unintended due to intervening actions of another assailant. The Court explained:

> The word "occurrence" instead of the word "accident" in the insuring
> clause means that the word "occurrence" is in fact broader than the word

"accident" and is so intended by the insurer.  In such case, the intent of the policy is to insure the acts or omissions of the insured, Including [sic] his intentional acts, excluding only those in which the resulting injury is either expected or intended from the insured's standpoint.

*Id.* at 724; *see also Grindheim v. Safeco Ins. Co. of Am.*, 908 F. Supp. 794 (D. Mont. 1995) (relying on *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 845 P.2d 746, 749 (Mont. 1993); *Phalen*, 597 P.2d 720).

Penn-Star mistakenly relies on *Blair v. Mid-Continent Casualty Co.*, 167 P.3d 888, 891–92 (Mont. 2007), and *King v. State Farm & Casualty Co.*, 2010 WL 1994708, *4 (D. Mont 2010), to bolster its argument that, because the acts of the defendants are intentional, they do not constitute an "occurrence," even if they resulted in accidental injuries.

The policies in *Blair* and *King*, unlike that here, did not include an exclusion for harms expected or intended by the insured. In *Blair*, the insured constructed a gravel pit in violation of zoning restrictions and was sued by a landowners association. 167 P.3d at 890. The Montana Supreme Court concluded the policy did not provide coverage because the "deliberate operation of removing gravel" was intentional, rather than an "accident" as required by the policy. *Id.* at 891. The *Blair* court distinguished *Phalen*, explaining that in *Phalen*:

[T]he policy in question defined "occurrence" as an accident which results in bodily injury or property damage.  However, unlike Mid-Continent's Policy in question here, that policy considered the results of a deliberate action because in limiting coverage it said that only injury which "[i]s either expected or intended from the standpoint of the

8

insured" was excluded.

*Blair*, 167 P.3d at 892. Thus, the holding of *Blair* is confined to policies that do not contain exclusions for harms unexpected or unintended by the insured. Based on *Blair*, the Court in *King* reached a similar conclusion, ruling that, because the underlying complaint did not assert an accident, but rather intentional acts and misrepresentations as part of a business deal, the actions did not constitute an "occurrence" under the relevant policy. 2010 WL 1994708, *5.[1]

Since the Penn-Star Policy expressly precludes coverage for occurrences that result in injuries that are expected or intended, *Phalen*, and not *Blair* or *King*, controls here. As a result, it is unnecessary to determine whether the defendants' actions were intentional. Under *Phalen*, the defendants' actions, intentional or negligent, constitute an "occurrence." But, as the Policy provides, if the injuries were either expected or intended, the defendants' actions are not covered.

## C.     Expected or intentional harm

The Penn-Star policy provides: "This insurance does not apply to . . . 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Penn-Star claims that it does not have a duty to defend because the

---

[1] For similar reasons, *Thomas v. Nautilus Ins. Co.*, 2011 WL 4369519, *6 (D. Mont. 2011) is also distinguishable from *Phalen*. While the policy in *Thomas* did include exclusionary language, it specifically applied to work product and sub-contractors and was not the general exclusionary language at issue in *Phalen*.

alleged injuries were expected or intended. Construing the facts in favor of the defendants, the Pooles' injuries were arguably neither expected nor intended from the defendants' perspective.

Exclusions and words of limitations, such as the expected-or-intended exclusion here, must be strictly construed against the insurer. *Phalen*, 597 P.2d at 724 (citation omitted); *Farmers Union Mut. Ins. Co.*, 90 P.3d 385 ("The fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense require that coverage exclusions be narrowly construed." (citations omitted)). Moreover, the facts to which those exclusions and words of limitations apply must be construed "from the perspective of the insured." *Farmers Union Mut. Ins. Co.*, 90 P.3d at 386. These rules of construction are consistent with the broader dictate that, "[u]nless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend." *Id.* at 386.

Construing the exclusion and facts in favor of the defendants, it cannot be definitively stated that the Pooles' alleged injuries were expected or intended from the defendants' standpoint. The Pooles, for example, claim that the defendants negligently misrepresented that the house could be built for a maximum of $750,000. The defendants deny making that representation. The defendants claim that, from their perspective, they did not expect or intend the Pooles to experience

any harm when the cost exceeded $750,000 because the defendants never told the Pooles that the cost would stay below $750,000. Of course, these facts will be resolved in the state-court proceeding, but, here, when the facts are construed in favor of the defendants, the Pooles' injuries were neither expected nor intended from the defendants' standpoint.

### D.    "Bodily injury" or "property damage"

Finally, occurrences are covered under the Policy only if they result in "bodily injury" or "property damage."  Penn-Star argues that it has no duty to defend the underlying claim because, in the state-court proceeding, the Pooles allege only financial harms resulting from the additional money they had to spend in order to finish the house and protect it from winter weather. Penn-Star argues that these injuries are not "bodily injuries" or "property damage." The defendants, on the other hand, argue that Penn-Star's interpretation of the underlying complaint is too narrow and that the Pooles suffered emotional distress amounting to "bodily injury" and experienced "property damage" by virtue of their "loss of use" of their house. Construing the facts in favor of the defendants, there is enough here to conclude that the Pooles have sufficiently alleged "property damage."

When determining whether an insurer has a duty to defend, the court must construe the underlying allegations in the complaint "so that all doubts about the

meaning of the allegations are resolved in favor finding that the obligation to defend was activated." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d at 385 (citation omitted). "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Id.* (citation omitted). Even when a complaint "does *not* present a claim which on its face is covered by the policy," the insurer nevertheless has a duty to defend if it has information that could give rise to a duty to defend. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 926 (Mont. 2009).

Here, the defendants claim that the Pooles have alleged "property damage," which the Policy defines as "physical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Penn-Star acknowledges that there were delays in the construction of the Pooles' house. The fact that there were construction delays implies there are potential damages resulting from the Pooles' "loss of use of that property." Of course, whether those damages actually occurred is a question of fact that will be resolved in the state court proceedings. But, at this point in the litigation, there is at least a possibility that the Pooles' suffered "property damage" resulting from the "loss of use" of their house. Resolving all doubts in favor of a duty to defend, there has been no unequivocal showing that the Pooles' claims are

not covered by the Policy. *See Farmers Union Mut. Ins. Co.*, 90 P.3d at 385 (citation omitted).

Penn-Star argues that any property damage suffered by the Pooles that resulted from a loss of use is specifically excluded under the Policy. Under Exclusion b, the Policy does not cover "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Under Exclusion m(2), the Policy does not cover "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of . . . [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

The nature of the parties contractual agreement, if any, is central to the dispute in this case. If the facts are construed in favor of the defendants and resolved in favor of finding a duty to defend, then the defendants neither assumed liability, as described in Exclusion b, nor violated the terms of their agreement with the Pooles, as provided in Exclusion m(2). Again, as the facts develop in the state-court proceeding, the opposite might be true, but, at this point, the allegations trigger Penn-Star's duty to defend.

The Pooles sufficiently alleged facts that could bring their claims within the Policy's property-damage coverage. As a result, Penn-Star has a duty to defend. Since Penn-Star has this duty on account of the potential property damage, the

Court need not address whether this duty also exists on account of any alleged "bodily injury."

## II.     Duty to Indemnify

In the conclusion to its opening brief, Penn-Star remarks in passing that it has no duty to indemnify the defendants. The defendants make no argument regarding Penn-Star's duty to indemnify. They simply argue that Penn-Star could "potentially" have such a duty.

As discussed above, the Pooles have alleged facts that might bring their claims within the Policy's coverage. As a result, Penn-Star could potentially have a duty to indemnify. But, as the parties are well aware, there are a number of factual disputes in the state-court proceeding that must be resolved in order to determine whether Penn-Star has a duty to indemnify. Accordingly, it would be inappropriate to grant summary judgment as to the question of whether Penn-Star has a duty to indemnify.

Because the factual disputes must be resolved in the state-court proceeding, it is premature to try and resolve Penn-Star's duty to indemnify.  So, that issue is stayed in this Court, pending the resolution of the state-court proceeding. *See generally Wilton*, 515 U.S. 277. The parties must file a status report every 90 days until the state-court proceeding is resolved to keep this Court apprised of how that case is progressing. Following the resolution of the state-court proceeding, the

stay will be lifted and the parties may file motions and cross-motions for summary judgment on the duty-to-indemnify issue.

## CONCLUSION

Penn-Star has a duty to defend the defendants against the Pooles' claims. But, in light of the factual disputes in the state-court proceeding, the Court will not yet resolve the question of whether Penn-Star has a duty to indemnify.

IT IS HEREBY ORDERED that the plaintiff's motion for summary judgment (dkt # 15) and the defendants' motion for partial summary judgment (dkt # 22) are GRANTED IN PART and DENIED IN PART.

The Court GRANTS summary judgment in favor of the defendants as to the question of whether Penn-Star has a duty to defend the defendants. Penn-Star has a duty to defend the defendants in the underlying state-court proceeding—*Poole v. Coyote Ridge Construction, Inc.*, Cause No. DV–10–1478A (Mont. 11th Jud. Dist. Ct., Flathead Co.)

The Court DENIES the motions for summary judgment to the extent that the parties ask the Court to determine whether Penn-Star has a duty to indemnify the defendants in the underlying state-court proceeding. The parties may renew their motions as to this issue after the state-court proceeding is resolved.

IT IS FURTHER ORDERED that the balance of this matter is STAYED, pending the resolution of the state-court proceeding. The parties must file a status

report 90 days after the date of this order, and every 90 days afterwards, that

updates the Court on the status of the state-court proceeding.

Dated this 27th day of February 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT

16